Good morning. Whenever you're ready, Ms. Frum. The court below erred in holding that the maximum penalty that could be imposed was 50% of the account, and not the 100% provided in the statute. However, even if the IRS could impose a 50% willfulness penalty, it erroneously did so here, and the court below erred in affirming it, especially- On your first point, is your argument that even though there was clearly what I think is a clear statutory change in 2004, that because there were earlier regulations out by the IRS, those earlier regulations, which are not consistent with the statutory change, trump the statute? Yes, Your Honor, that is precisely- Wait, why can't- Wait a minute. Why can't Congress supersede a regulation by passing a law? Your argument seems to fly in the face of the whole concept of Chevron analysis, for example, where we look at the statute to see if it has meaning before we do anything else, and if the right complies with that meaning. How on earth can a regulatory entity refuse to obey a law passed by Congress? I think the regulatory entity in this case had to pass a regulation that would in effect enact this, and chose not to do so. So Congress lives at the behest of what agencies do. In other words, what if bureaucrats at the IRS didn't like what Congress did? They could be issuing regulations all the time, or not changing regulations. That's not my understanding of how the system works. Congress was in its authority to make this change. I don't think you're disputing that. No, of course not. And I'm not understanding how on any theory of administrative law or whatever we're looking at, an earlier regulation that was based on a different statutory provision would inhibit or impair Congress from being able to change it. Except that Congress didn't make it self-actuating. The agency had to pass a regulation. I'm going to refer this Court to one of its cases, which is cited in my reply brief at page 4. Refer to the language in the law where it's not self-actuating. It says the Secretary may impose a penalty, and then it gives the maximum penalty that the Secretary may impose. But the Secretary in this case, by not changing the statute... Wait, wait, wait, wait. The Secretary did actuate by imposing the penalty. The Secretary originally actuated by imposing the penalty of $100,000, and never changed that, because the penalty remained as it was in the regulations. Wait, wait, wait, wait. Are you saying that there was no $800-and-something-thousand-dollar penalty imposed? In the regulations I'm talking about, they imposed an $800-and-something-thousand-dollar penalty. And what I'm saying is, when they imposed that $843 or whatever it was, 50 percent of the amount that was hidden, then the Secretary effectuated the statute, didn't they? They did, but they did not follow their regulations. So you're saying that the statute has no force in effect as long until they issue superseding regulations with regard to the new statute? Correct. What's your case on that? Colliott and Watthead. Wait a second. Do you have something above the district court level? No. This is a case of first impression here, Your Honor, on the appellate. Well, maybe because, I mean, sometimes cases don't come up for adjudication because parties think the result is self-evident. And so maybe, I mean, you know, it seems to me, I mean, there are numerous cases. Congress is always passing new statutes. I haven't seen someone argue that that statute has no force in effect, because there were previous regulations that were inconsistent. Let me put it this way. Is there any statute, any case in any court of appeals in which the court of appeals has said that when Congress passes a law which has a clear holding that a regulatory entity may trump that statute by not passing an appropriate regulation? I'm going to refer, Your Honors, to Mid-Continental Mail, which is cited at page 4 of my brief in which an agency attempted to repeal a regulation on the ground that it was not consistent with the statute. And this court said that even though the agency wanted to repeal the regulation to conform to the statute, it still had to follow the notice and comment procedure and that the regulation would not be effective until it was put into effect in the proper way. There was no notice and comment procedure followed here, and I don't believe that any change in the regulation was effective. Somehow I doubt that. May I move along to another point, Your Honor? Sure, sure. You may move along. Did you say page 4? Of the reply brief. Oh, okay. In the case of United States v. Khan, which the appellee provided to the court a few days ago, Judge Masumoto gave a cogent explanation as to why the statute regarding failure to file FBARs had an increased penalty, and that had to do with 9-11 and money laundering. Although all taxpayers were obligated to file FBARs, the maximum penalty for failure to file should have been reserved to those criminally-derived proceeds, those who were engaged in complex tax evasion schemes, or money laundering. So now we're assuming that we're under the statute, and you're saying that the Secretary has discretion within that maximum penalty thing, and what's our standard of review? Your standard of review is clear error, basically, because there was clearly erroneous findings of fact, and I'm stating that these were clearly erroneous findings of fact, and a clearly erroneous exercise of discretion. Okay, so bring us back to where you were, where you were talking about those findings that were clear error. Mrs. Norman received the money in the bank account as a gift from her mother. The bank account itself was a gift from her mother. Her mother presented her with the forms. She signed them. Who opened the account? She signed the opening forms, but she did not put any money into the account. She opened the account, didn't she? I don't think, I'm not arguing semantic or lawyer's arguments. I don't think that she opened the account because the money in the account did not originate with her. The forms didn't even originate with her. Why does that make any difference? I mean, she's the one that conducted herself. She was in charge of the account. There's no question about that. She was in charge of the account, and she managed it in the way that her mother, as So she did basically what her mother did. Is there a parallel case with her mom? There was, but her mom is deceased and did not elect to sue regarding the penalty. Her estate paid the penalty, and they moved on. So I don't understand why there's clear error because if you're doing something that someone else did, then it should excuse it or mitigate it or what? We're speaking about willfulness, and that is part of the issue. Is there any evidence that the appellant was mentally incapable or under undue influence by her mother? Not under influence by her mother, but basically she was beyond unsophisticated, somewhat ditzy. Really? Yes. And despite that ditziness, she found enough moxie to instruct the Swiss account not to buy U.S. securities because they'd be reported. She denies that she understood that she did as her mother did. Again, not buy U.S. securities. They were not buying U.S. securities, Mindy, so they didn't buy U.S. securities. And basically, the formulation of willfulness in the district court was if you knew that you had to file an F-bar and you didn't file an F-bar, you were willful. If you recklessly failed to read your tax return and you didn't file an F-bar, you were willful. Or if you should have read your tax return and know that you're supposed to file an F-bar, you're willful. And which of those do you think is wrong? Well. I just listed three things that constitute willfulness. What's not willful? None of them. All of what I'm saying is that if there isn't more required, then basically you didn't check the box and you didn't file the F-bar, then why is there a distinction between willfully failing to file an F-bar and not willfully failing to file an F-bar? Because she was sufficiently involved, according to the fact findings below, in the account, in the hiding of the money, the avoiding detection, when, you know, there's a note from the banker that when he informed her they were going to have to have a new policy and were going to have to start disclosing. There's a note that she supposedly said, well, I'm not pleased with that. There's all kinds of evidence. She may dispute all of that. She may claim, I never spoke to any of those people. There are bank records. They were introduced into evidence. And the question isn't, I'm not going to hold a new hearing and decide whether I believe Mindy or not. I mean, it's a question of what the lower court did and whether there's substantial evidence for it. And in light of all the evidence, I'm hard-pressed to find that there isn't. Again, Your Honor, I believe that there is sufficient question as to why. And I also believe that the ---- What you seem to really blame is that there's sufficient evidence that if the court had ruled the other way, you would be able to say there's enough to support the court. Excuse me. I'm sorry. I don't understand the question. What you're saying is that there's an argument the other way. No, I'm saying more than that, that the argument the other way is substantially more persuasive in that the court's argument is not properly supported by the evidence. You're into your rebuttal. I'll get to the other side. Thank you. Good morning. May it please the Court, Deborah Snyder for the United States of America. The Court of Federal Claims correctly upheld ---- Can I just ---- Yes, sure. Just can we get the first point first, which is can you explain to us a little administrative law? What is the ---- Can the agency not act, even if there's a change in the statute, in order to effectuate that change? Is the IRS required to promulgate rules, to notice and comment rulemaking? And can the statute not be implemented in the absence of those rules? No, of course not. When Congress changes the law, as it did in this case in 2004, in the face of poor FBAR compliance, it changed the law to significantly increase the penalties. When it did that, it superseded the old statute with a lower penalty, and it also superseded the 1987 regulation that simply mirrored the language of the old statute. Now, your friend cited, and you didn't respond, it was cited in gray, I think, for the first time, a case called Mid-Continent Nail Corporation in her gray brief in 2004 that she alluded to. And that seems to suggest ---- I read the gray brief after it was cited again, and I didn't see that it was on point in the slightest. I can reply to that. So in Mid-Continent Nail, there was no intervening statutory change. So there, I guess, I think it was the Department of Commerce, and they had issued a limiting regulation where they had explicitly said, even though the statute allows us to do certain things, we're normally not going to exercise our discretion to do that. And then they, I guess, without notice and comment, went to withdraw that regulation. And they were saying, well, that was a logical outgrowth of a prior notice that we issued, and this court held that it was not. But that was not a situation like we have here where there's an intervening statutory change, which is what happened. You have this regulation, then Congress changed the law. I know how many regulations on all the paper that the IRS has out there. It would have been nice, as a housekeeping matter, for them to withdraw a regulation that was no longer in effect because it was superseded by a different statutory provision. Don't they normally do some sort of cleanup? Was this just something that fell through the cracks, or are there plenty of regulations out there that no longer have any force in effect because the statute's been amended? Well, I don't know how many there are in total, but I do know certainly that FinCEN must have a lot of priorities. They have announced a plan to withdraw the regulation, but they have not completed the process yet. I think that this argument, like nobody actually saw this as a problem until very recently, within the last year or two, when you had account holders in cases mentioned, Colio and Wadan, who were saying, wait a minute, there's this other thing. Since then, of course, right. And I think the last time I counted, there were nine district courts in our favor as opposed to the two that were against. But I guess the point I'm trying to make is that before recently, when this argument started getting a little bit of traction in the district court, everybody understood that when Congress changed the law in 2004, that was the law. So this didn't necessarily appear to be a priority. But, I mean, further to the point about not withdrawing the regulation, the fact is that new statutes trump old regulations to the extent of a conflict. I find the argument bewildering. I mean, in that, a regulation, the Secretary is only authorized to adopt regulations consistent with the law. This regulation is now inconsistent with the law, so it's just invalid. Right? It became invalid when the law changed. Right. It's just invalid. It's not, I mean, I can understand some sort of reliance, a stop-all argument possibly. I don't see how you do that because the law is the law, but maybe there could be some sort of a reliance argument. I can respond to that also because it's very clear in this case that Ms. Norman did not rely on the old regulation and was not misled by it. How do we know that? We know that because she didn't raise this issue at any point in her complaint, in her summary judgment papers, or even at trial. She didn't say or her counsel didn't say there's an old regulation. What happened is that after the first district court held that the regulation trumped the statute, her counsel sent a letter to the court after trial saying, here's this case called Colio. Assuming Colio is correct, the cap is limited to $100,000. So I don't know how there could be reliance either, but I mean in this case we know for a fact based on the record that there was not. Well, I've got a question for the government. At JA350, it indicates that the monthly balance in 2007 was $2 million. Now I know that the statute says up to 50%, but I'm curious why the penalty wasn't a million instead of only $803,000. I don't know the answer to that. I mean I think the penalty that was imposed is approximately 50% of the account balance that was reported on the belated FBAR. So I guess based on the record I can't speak. You took her word for it? Well, it's in there. The belated FBAR is in the record. I understand that. That's actually at page 338, 337 to 338 of the appendix. So I don't know exactly what it was 50% of, but I can say that at no point has Ms. Norman raised the issue that it should be 50% of something else. My point is it should be higher. I take your point. Given that it can be up to 50%, why 50% in this case? What are the factors that the secretary would consider in assessing what the amount should be? I mean it's just not a default of 50%, right? Right, and I can answer that. First I'd preface the answer by saying that Ms. Norman has not raised an APA claim in this case. She is not saying that the secretary abused his discretion by not considering mitigating factors and imposing 40% or 25%. Her argument is that the penalty legally cannot be what it is. But that said, there is a great deal of evidence in this case that Ms. Norman's failure to report her account was in fact willful. But it being willful is what gets you to the statute that allows you to impose up to a maximum of 50%. So the very fact that it's willful doesn't mean 50% automatically. For people who are willful, you'll impose up to 50%. That's right. The fact that there's a lot of evidence that proves it is in fact willful just gets you under the umbrella of the statute. What factors, if any, are you aware of that the secretary looks at once there is a willfulness determination to assess where the penalty should be in the up to 50% range? So there is a process that the IRS applies. You know, a willfulness penalty has to go through several levels of approval. So there is that. And then there are also internal guidelines that the IRS can look to to see if there are any mitigating factors. And again, that's not an argument that's been raised in this case. So you start with 50% and then lower it depending on mitigating? Is that what you're saying? Not necessarily. I mean, I don't know the order that it followed here. I mean, I do know that there is a process. There are layers of review. And I also know that, in fact, Ms. Norman challenged it internally at the IRS and went to the IRS Office of Appeals. So there's certainly a robust process that was followed here. And the other thing is mitigating factors. I mean, in order to have those mitigating factors apply, one thing that the person has to do is cooperate with the examination. And one of the very prominent features of this case is that Ms. Norman made repeated statements to the IRS when it started to examine her return and caught on to this account. First she said that, oh, well, I was shocked to first learn of this account in 2009 when my mother told me I didn't know anything about it before then. No, I know. She made a lot of lies in the process. I mean, she just lied herself into a hole. But I guess one of the factors I would hope that the Secretary is considering in assessing this is overall net worth. We're dealing with a substitute school teacher. I don't know what she may have otherwise inherited from her mother's estate. I don't know what her overall—I mean, I actually did see her tax return, and it was different than I expected. But I would hope that the Secretary would take into account he would not start at 50% because the statute says up to 50%, but that he would take into account things like overall net worth because this is a penalty, so the idea is to deter others from doing it and things like that. I do take your point, and I honestly don't know. I mean, I haven't looked behind the process in this case. Well, it wasn't an issue on appeal, and it's not in front of us. It was more a matter of me sort of not understanding how the process works and, I don't know, wanting to make some sort of minimal record about the fact that I have a few concerns about how it might be that if it's going to be an automatically 50% every time, I don't think that's consistent with the statute. And I do think that could be an APA violation because then the Secretary wouldn't be actually evaluating each case and deciding where to assess a penalty. That's not in front of me. That's not in front of us, and I guess I would speak to the point. I mean, we recognize that it's a large penalty, but Congress intentionally imposed a large penalty. When Congress enacted the Bank Secrecy Act in 1970, there was language in the legislative history to the effect that secret offshore bank accounts are the largest single loophole in American tax law. And when it raised the penalty to the current level in 2004, it did so in the face of very poor compliance that was reported by the Treasury Department and said that improving compliance was vitally important to tax administration and to other issues. And another point is, and I don't know if this goes to your concern, but that Congress actually authorized 50% penalties per year, and the Secretary in this case did not do that. We're only dealing with one 50% penalty for one account for one year. Are you saying that they could have done, what, like 50% of $1.6 million, then 50% of $800,000, then 50% of $400,000? No, it wouldn't work that way. It would be per year that the FBAR filing wasn't done. But that said, that would be exceedingly rare. Congress has authorized it. That's the point I'm trying to make, is that because of a serious – Wait, you're not talking about a calculation in which the amount due exceeds the total amount invested, right? I don't understand what calculation you're talking about. You know, 50% per year. We don't understand how you're adding that up. What does that mean? It means, in theory, that Congress has authorized the Secretary to impose cumulative penalties in that manner. Give me an example. Say she had $1.6 million for three years, and that Congress could have dinged her for three years of improper FBAR compliance. That is what the statute says, but that is not – So it could conceivably, if they were to do that, it could equal the balance in the account. Well, it would exceed the balance. Right, but – I mean, if they were going to take 50% of that 1.6 three years, that exceeds the balance of 1.6. Again, I feel like I need to make a record. That can't possibly be the way it works. I mean, simple mathematics. 50% in 1983 would then leave the account at $800,000, so they can't ding her for 50% of $1.6 million the next year because she wouldn't have had $1.6 million the next year. She would have had $800,000. It seems to me the most they could ding her for in that second year would be $400,000, and then similarly $200,000. I can't – it would blow my mind if Congress came in and said, $1.6 million, we want $800,000 a year for each of three years, so you now owe us the whole $1.6 million plus another $800,000. I can't fathom – that wouldn't make any sense to me. Is that how you think it actually works? That is how the statute reads, and what I'm saying is that the IRS generally exercises its discretion not to do that. I'll be clear. I don't think the statute reads that way, and I don't think the IRS has the discretion to do that. So that's totally advisory. We don't do that. Well, I'm just chatting. Right, yeah, and we would disagree with that, but I guess the point that I'm making is that given that's how the statute reads, that the IRS does not automatically jump to the highest thing and did not do so in this case. Well, I don't think the statute reads that way, so you don't really get any credit for me for not doing something that I don't think you had a right not to – didn't have a right to do. But anyway, good. Do you have anything else that you'd like us to know? I guess – does the Court have any further questions? I know there are other issues. There's an Eighth Amendment, which we believe was waived by not raising it below. There's an Eighth Amendment claim. Does the Court have any further questions for me? No. We ask for affirmance. Thank you. Thank you. Judge Moore raised an interesting question about which I had thought. You've painted this picture of this innocent, naive schoolteacher, and yet her tax forms show a lot of other income in addition to the hidden Swiss accounts, substantial capital gains and so on. Was this just out there? I think these were – I think – I'm speculating because it's not in the record, but I believe there were other gifts from her mother because the way Ms. Norman lived was she worked multiple jobs. She was a substitute teacher. She taught summer school. She tutored SAT students. She did not live as a wealthy woman. She lived as kind of a person living hand to mouth, and all of this money was out there. But aside from one withdrawal whose size is disputed, this money was untouched, and I don't think it was to hide it from the government. I think that was just basically the way she lived. And I think that what we're discussing here in a lot of senses is that Mindy Norman was obligated to understand the vagaries of the tax law, but the IRS is not obligated to understand the vagaries of the statute that they are enforcing, which kind of seems to me to be somewhat backwards. She's being penalized for not understanding what an FBAR is. They are not being penalized for not understanding that they have to amend their regulations. Well, that's your opinion. All right. Anything else? Not unless the Court has any other questions. Thank you. We thank both sides, and the case is submitted.